UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**JEFF O. READY**,                                                   Civil Case No. 3:11-CV-00032-KI

                Plaintiff,                                   OPINION AND ORDER

                       v.

**MICHAEL J. ASTRUE**, Commissioner
of Social Security,

                Defendant.


        Jeff O. Ready
        1125 SW 12th, #603
        Portland, Oregon  97205

                Pro Se Plaintiff

        S. Amanda Marshall
        United States Attorney
        District of Oregon


Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97201-2902

Franco L. Becia
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

*Pro se* plaintiff Jeff Ready brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

Ready filed an application for SSI on January 3, 2007, alleging disability beginning January 1, 1989; he later amended his onset date to January 12, 2007.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, Ready, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on November 12, 2009.

On December 10, 2009, the ALJ issued a decision finding that Ready was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the

final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on November 12, 2010.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied.

Page 3 - OPINION AND ORDER

Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ determined that Ready suffered from the severe impairments of anxiety disorder, polysubstance abuse, attention deficit hyperactivity disorder ("ADHD"), and bipolar disorder. The ALJ also found, however, that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  The ALJ concluded Ready could perform the full range of medium work, although he could only understand and carry out short and simple instructions. In addition, the ALJ believed Ready should not have any interaction with the general public and should have only brief and structured interaction with co-workers.  He found that someone with Ready's residual functional capacity ("RFC"), as described above, could perform work as a janitor/cleaner, laundry worker, and small electronics component assembler.

**FACTS**

Ready, who was 47 at the time of his amended onset date of disability, has a GED[1] and a spotty work history as a musician, chauffeur, and a temporary general laborer.  He has a history of drug and alcohol abuse, but maintained sobriety by attending AA and NA meetings, and a lengthy criminal history, including convictions for fraud.  He alleged paranoia, panic attacks, agitation, and back pain.  The diagnoses he gave included attention deficit disorder, bipolar disorder, depression, personality disorder, anxiety, seizures, and anti-social disorder.  The remainder of the facts are contained in the analysis below.

**DISCUSSION**

The primary issue posed by Ready's challenge is whether the ALJ properly rejected the opinions of a consultative examiner, Peter Okultich, Ph.D., and Ready's treating provider, James Bartruff, M.D.  I find error in the ALJ's analysis of the medical evidence.

I.    Medical Evidence

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another

---

[1]Ready now reports to the Court that he called Hollywood High to confirm he had a GED and learned that he does not; the record, however, is replete with references that he obtained a GED.

physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Widmark, 454 F.3d at 1066 n.2.

Since the opinion prepared by State Agency consultant Frank Lahman, Ph.D., contradicted the opinions of Dr. Okulitch and Dr. Bartrum, the ALJ was required to give specific and legitimate reasons supported by substantial evidence in the record for finding their opinions entitled to little weight.

A.    Dr. Okulitch

Dr. Okulitch met with Ready in a consultative examination on March 3, 2007.  Ready described his childhood, described his chief complaints, revealed his medications, his legal history, his drug and alcohol abuse, and answered questions regarding his current level of functioning.  Ready broke down into tears when discussing his abuse history.  He also became "quite agitated and upset when I asked about his posttraumatic stress disorder and what symptoms he has," as he believed Dr. Okulitch had all his records, and he "seemed focused on people lying to him and that he could not trust anyone."  Tr. 300-01.

In addition, Ready refused to answer any questions regarding his mental functioning. Specifically, he refused to disclose his height or weight, to define or spell words, to give the date, or to calculate serial 7s or 3s.  Dr. Okulitch described Ready as "tense, quite hostile and paranoid."  While Ready was "able to talk in complete sentences" and was "coherent," he had a "normal, angry speech pattern."  Tr. 301.  Dr. Okulitch described Ready's activities of daily

living and assessed his social functioning, but found it "impossible to assess Mr. Ready's

memory as he refused to answer many questions and it was impossible to assess his ability to

concentrate and persevere at completing tasks." Tr. 302.  He diagnosed Ready with

posttraumatic stress disorder, mixed panic disorder with bouts of depression, and drug and

alcohol dependency in remission.  He also diagnosed narcissistic personality disorder, anti-social

personality disorder, and assigned a Global Assessment of Functioning score of 40.[2]

He went on to discuss Ready's prognosis as follows:

> **DISCUSSION/PROGNOSIS:**  It is my assessment that this 47-year-old male
> reports that he is unable to find work because of his legal difficulty and his
> problems being able to trust or understand what is being asked of him.  I believe
> that Mr. Ready is severely emotionally impaired and that he clearly has issues
> related to his past abuse.  It is impossible to assess Mr. Ready's ability to perform
> simple and repetitive tasks without his cooperation even in an interview.  I also
> believe that Mr. Ready has clear indications of paranoia, panic, and difficulty
> relating to other individuals.
>
> It is also my opinion that Mr. Ready has several addictions and a history of anti-
> social and criminal behavior.  I believe that he is unable to control his own
> finances, and possibly this is something that can be managed by his probation
> officer or by his sponsor through NA or AA.  In any case, I do not believe that he
> can handle finances without very easily slipping back to using some drug.
>
> **FUNCTIONAL ASSESSMENT/MEDICAL SOURCE STATEMENT:**  It is
> my assessment that Mr. Ready clearly has significant problems and that he would
> have great difficulty interacting with either coworkers or the public in any
> reasonable fashion.  I believe it would have been very simple for him to have
> become violent during this interview and I am sure that could be very intimidating

---

[2]The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to
determine the individual's overall functioning. A GAF of 31 to 40 means, "**Some impairment in
reality testing or communication** (e.g., speech is at times illogical, obscure or irrelevant) **OR
major impairment in several areas, such as work or school, family relations, judgment,
thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work;
child frequently beats up younger children, is defiant at home, and is failing at school)."  The
American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th
ed. 2000) ("DSM-IV").

to coworkers.  It is impossible for this examiner to fully determine his level of functioning.

Please feel free to contact me if you need further information on this very disturbed individual.

Tr. 302-03.

The ALJ generally found that all of the medical diagnoses were based on "the claimant's subjective complaints and self-reporting of symptoms[.]"  Tr. 47.  More specific to Dr. Okulitch, the ALJ gave limited weight to the assessment since the ALJ believed it was too difficult for him "to formulate a fully reasonable assessment of the claimant['s] functional assessment in light of the claimant's unreliability."  Id.

A physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).  However, Dr. Okulitch's diagnosis of Ready is very different from that described in Tommasetti, which relied on a "rehashing of claimant's own statements."  Id. at 1041.  Instead, Dr. Okulitch based his diagnoses on the limited medical records he had from Life Works Northwest and OHSU, as well as on his observations of Ready as "tense, quite hostile and paranoid."  He also noted Ready's anger about the absence of medical records, emotional response when discussing abuse, as well as Ready's legal troubles and past drug and alcohol abuse.  Although Dr. Okulitch may also have considered comments Ready made about spending time alone, inability to trust others, and his inability to enjoy life, the diagnoses were not "based to a *large* extent" on these self-reports.

Furthermore, although the ALJ is correct that Dr. Okulitch's opinion is not enlightening as to Ready's ability to concentrate and handle tasks, it is strong support for Ready's inability to

work with the general public or coworkers "in any reasonable fashion" as it is based on Dr.

Okulitch's impressions rather than the testing Ready refused to undergo.  Tr. 303.  As a result,

the ALJ erred in assigning limited weight to Dr. Okulitch's entire opinion.

Given Dr. Okulitch's strong language describing Ready as "a very disturbed individual"

and suggesting that Ready may easily have become violent in the interview, which would be

intimidating to co-workers, I am not convinced the ALJ's error was harmless.  It is not

sufficiently clear, without further explanation, that a limitation ordering brief and structured

contact with co-workers accounts for Dr. Okulitch's observations.  Accordingly, I find the ALJ

erred.

B.    Dr. Bartruff

Dr. Bartruff diagnosed Ready with panic disorder (provisional) and a personality disorder.

He completed a Mental Impairment Questionnaire (RFC & Listings) in October 2009 concluding

that Ready would have a marked problem interacting appropriately with supervisors, getting

along with co-workers, responding appropriately to pressures in a usual work setting, and

responding appropriately to changes in a routine work setting.  He indicated the assessment was

based on "3 brief visits, incomplete records" but that the clinical findings supporting the

diagnoses were "jumpiness, pain behavior, inability to organize, distracted reporting, forced

speech."  Tr. 530.  He believed that Ready would miss work about three out of seven days.   In

another assessment, labeled Medical Source Statement of Ability to do Work-Related Activities

(Mental) and dated around the same time, however, he opined that Ready would have only

moderate difficulties interacting with co-workers.  Tr. 527.  The reason supporting that

conclusion is illegible.

As with Dr. Okulitch, the ALJ concluded that the medical diagnoses were based on "the claimant's subjective complaints and self-reporting of symptoms[.]" Tr. 47. In addition, he found Dr. Bartruff's functional assessment entitled to little weight due to the short treatment history and because the ALJ believed it was based on Ready's reports of symptoms.

First, although it would normally be a sufficient reason to reject a treating physician's opinion on the basis of his limited interaction with the claimant, in this situation I find it illogical and irrational that the ALJ rejected a treating physician on the basis of the short treatment history, in favor of a State Agency consultant with no treatment history at all. Furthermore, as with Dr. Okulitch, the ALJ erred in finding Dr. Bartruff's evaluation to be based on Ready's self-report of symptoms when Dr. Bartruff supported the diagnoses with his observations of Ready's "jumpiness, pain behavior, inability to organize, distracted reporting, [and] forced speech." Tr. 530.

Accordingly, I find the ALJ failed to give significant and legitimate reasons supported by substantial evidence in the record for his decision to give little weight to Dr. Bartruff's opinion.

II.    New Medical Evidence

Ready provided to the Court a letter from Dr. Bartruff dated March 14, 2011 identifying Ready's current diagnoses of Bipolar 1 and 2, ADDHD, Mixed Personality Disorder NOS, with past histories of polysubstance abuse, by report in remission. Dr. Bartruff also mentions chronic low back pain with S1 nerve impingement, and Hepatitis C with fatigue, and that Ready is awaiting a liver biopsy. Dr. Bartruff reports, "[Ready] is disabled from these issues both psychiatric and medical, and there is no likelihood he will again be able to consistently engage in the workforce." Mot. to Add Recent Psychiatric Medical Evaluation to Compl. Ex. 1 [8].

Normally, the court may only consider evidence presented to the ALJ or Appeals Council. 42 U.S.C. § 405(g). However, this court may remand a proceeding "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Id. If the evidence did not exist prior to the Secretary's final decision, good cause exists for the plaintiff's failure to present the evidence. Burton v. Heckler, 724 F.2d 1415, 1418 (9th Cir. 1984). Here, I will remand the proceeding to the ALJ to evaluate Dr. Bartruff's latest opinion. The letter is new evidence that is material to the questions of Dr. Bartruff's functional limitation assessment and of Ready's ability to work. Furthermore, the good cause prong, which is "liberally applied" when there is no prejudice to the Secretary, is met here. Embry v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988). This is not a case where Ready sought out new evidence after the ALJ's denial of his application, but rather this is ongoing medical treatment by Dr. Bartruff, a physician whose previous opinions played a part in the ALJ's disability analysis. See id. at 424 n.5 (does not raise new issues, but represents ongoing treatment; is good cause).

III.    Remaining Arguments

I do not address in detail Ready's remaining arguments because the ALJ's opinion is otherwise free of legal error. The ALJ found Ready generally not credible based on Ready's unwillingness to participate in the mental status examination with Dr. Ukolitch, his criminal history (including fraud convictions), his drug-seeking history that was well-documented by his treating providers, and his inconsistent responses to questions, sometimes in the same interview. These are all clear and convincing reasons to find Ready less than credible about his symptoms. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (lack of cooperation during an

evaluation, efforts to impede accurate testing of limitations, and making inconsistent statements are valid reasons to find that a claimant lacks credibility); Edlund v. Massanari, 253 F.3d 1152, 1157-58 (9th Cir. 2001) (suggesting exaggerating complaints of pain for prescription medication is a credibility factor); Hardisty v. Astrue, 592 F.3d 1072, 1080 (9th Cir. 2010) (in EAJA context, government was substantially justified in relying on convictions for adverse credibility finding). In addition, the ALJ gave reasons to reject the lay witness testimony that were germane to each witness. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). Finally, Ready complains of bias, but there is no evidence the ALJ exhibited any favoritism toward the government. Rollins v. Massanari, 261 F.3d 853, 857-58 (9th Cir. 2001) (ALJs presumed to be unbiased; claimant "required to show that the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment").

IV.    Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

Page 13 - OPINION AND ORDER

Since there are issues to be resolved before a disability determination can be made, I remand for further hearing and findings.  The ALJ erred in rejecting Dr. Ukolitch's entire report, when the doctor's assessment of Ready's difficulties with social interaction were well-supported by his clinical findings, but the RFC may have adequately addressed Ready's limitation in working with co-workers as assessed by Dr. Ukolitch.  See Edlund, 253 F.3d at 1160 (if the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value).  In addition, the ALJ failed to give specific and legitimate reasons for rejecting Dr. Bartruff's opinion, but the opinion is open to challenge for being too brief and for lacking support in the treatment records.  Dr. Bartruff's most recent update on Ready's mental health, however, is relevant to the ALJ's assessment of Dr. Bartruff's earlier opinion and to Ready's ability to work.

### CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above.  Judgment will be entered.[3]

Dated this _____20th_____ day of January, 2012.


_____/s/ Garr M. King_____
Garr M. King
United States District Judge

---

[3]Typically the court remands under sentence six of 42 U.S.C. § 405(g) when newly available medical evidence is to be considered.  However, where I am reversing and remanding for error, I see no reason to retain jurisdiction over the case.

Page 14 - OPINION AND ORDER